# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ———————————————— | ) | |
| UNITED STATES OF AMERICA, | ) | |
|  | ) | |
| v. | ) | Crim. Action No. 16-0023-3 (ABJ) |
|  | ) | |
| BRADLEY LEE, | ) | |
|  | ) | |
| Defendant. | ) | |
| ———————————————— | ) | |

## MEMORANDUM OPINION

On June 7, 2016, defendant Bradley Lee was indicted on one count of interference with interstate commerce by robbery, in violation of 18 U.S.C. § 1951. Indictment [Dkt. # 13] at 3. He was not arrested until July 27, 2016, when he was apprehended in Rochester, New York. *See* Rule 5 Letter [Dkt. # 25]; Bradley Lee Arrest Warrant [Dkt. # 26]. On August 11, 2016, after he was transferred back to this District, the government moved for his temporary detention. Oral Mot. for Temporary Detention (Aug. 11, 2016); Min. Entry (Aug. 11, 2016).

After a hearing on August 23, 2016, the Magistrate Judge ordered that the defendant be released into the High Intensity Supervision Program, on personal recognizance. Min. Entry (Aug. 23, 2016); Order (Aug. 23, 2016) [Dkt. # 30]. The government asked the Court to stay the pretrial release order and sought review of the Magistrate Judge's denial of the detention motion. Mot. for Emergency Review & Appeal of Release Order [Dkt. # 27] ("Gov't Appeal Mot."). The Court granted the motion, stayed the Magistrate Judge's release order, and set a detention hearing for August 24, 2016. Order (Aug. 23, 2016) [Dkt. # 28]. The government renewed its motion for pretrial detention the next day, Mot. for Pretrial Detention [Dkt. # 29] ("Gov't Detention Mot."), and the defendant opposed it. Def.'s Suppl. to Record [Dkt. # 35] ("Def.'s Suppl.").

The detention hearing was held on August 24, 2016, and continued on August 25, 2016. Min. Entry (Aug. 24, 2016); Min. Entry (Aug. 25, 2016). At the conclusion of the hearing, the

Court granted the government's motion and ordered the defendant to be held without bond.  In reaching that decision, the Court considered the relevant law, the allegations presented in the indictment, the motion and opposition, the evidence presented at the hearings, and the information provided by the Pretrial Services Agency, as well as the statements and arguments of counsel. Based on the record before it, the Court found by clear and convincing evidence that there was no condition or combination of conditions that could "reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community" if defendant was released.  *See* 18 U.S.C. § 3142(g).  The reasons for the Court's decision are set forth in more detail in this Memorandum Opinion; in sum, there is a presumption of dangerousness that has not been rebutted, and there is significant evidence of defendant's efforts to flee from the police and evade capture, including the undeniable fact that he was apprehended in Rochester, New York.

## BACKGROUND

This case involves a series of armed robberies allegedly committed by a small group of friends and relatives in various combinations.  At the detention hearing and in pleadings filed before the Court, the government proceeded by proffer, and it also presented evidence, including surveillance footage, still photographs, social media postings, a videotape of statements made by the defendant after his arrest, and the testimony of Special Agent Charles Rooney, the FBI case agent who investigated the robberies in question.  Defendant also presented evidence and offered testimony from his girlfriend of five years, Faith Hudson.  Based on the pleadings filed and the evidence presented in this case to date, the Court makes the following findings of fact.

The indictment charges, among other offenses, that defendant Bradley Lee, his brother Breyon Lee, and an individual named Gregory Hull committed a robbery in violation of the Hobbs

Act on December 21, 2015.  Indictment at 3; Mem. Op. & Order (July 1, 2016) [Dkt. # 24] at 2.[1]
On that date, at 8:33 p.m., four individuals entered the Rite-Aid pharmacy located at 4635 South
Capitol Street, S.W., with their faces covered.  Mem. Op. & Order at 2.  Surveillance footage
shows that one of the individuals hopped the front counter and pointed a gun at the cashier.  *Id.*
According to an eyewitness, the man told the cashier to give him the money from the register or
he would kill him.  *Id.*  A second individual pointed a second gun at a different eyewitness who
was at the counter purchasing items, and he told her to stay down.  *Id.*  As this was occurring,
security camera footage shows a third individual hopping over the pharmacy counter, taking
several bottles of medicine, and crossing back over the counter.  *Id.*  The four men then left the
store together.  *Id.*

An eyewitness alerted passing Metropolitan Police Department ("MPD") officers to what
had occurred and directed the officers to a white BMW parked nearby, which the suspects had just
entered.  *Id.*  The suspects fled in the BMW into the Barry Farms neighborhood in Washington,
D.C., where they bailed out of the car and fled on foot.  *Id.*  Officers eventually apprehended
defendant Hull, but they did not locate any of the other suspects.  *Id.*  Inside the BMW, police
found three bottles of medicine, at least two of which appear to have originated at the Rite-Aid.
*Id.* at 2–3.  Fingerprints belonging to Hull and another indicted defendant, Anthony Burns, were
found in the BMW.  *Id.* at 3.  Defendant's brother, Breyon Lee, was later determined to be the
source of fingerprints recovered from the spot where the third robber placed his hand as he vaulted
the pharmacy counter.  *Id.*

---

1       At a detention hearing held for defendant's brother, Breyon Lee, *see* Min. Entry (June 23,
2016); Min. Entry (June 28, 2016), the government presented evidence relevant to both defendants.
That evidence was also introduced in this proceeding.  For that reason, the Court relies in part on
the recitation of facts contained in its Memorandum Opinion and Order granting the government's
request that Breyon Lee be detained pending trial.  *See* Mem. Op. & Order (July 1, 2016).  Much
of the legal analysis in that opinion is reprinted here, as well.

Four fingerprints belonging to defendant Bradley Lee were found on or inside the BMW. Gov't Detention Mot. at 2.  In addition, the government has proffered that the suspect they believe to be the defendant was shown entering the Rite-Aid on the surveillance footage wearing a black "True Religion" brand hooded sweatshirt with white piping and black jeans, an outfit which matches clothing worn by the defendant in a photograph posted to social media by co-defendant Burns in late 2015.  *Id.* at 2–3.

The government has also put forth evidence, including surveillance footage, that tends to tie defendant Bradley Lee to at least two additional armed robberies of two 7-11 convenience stores on December 12, 2015.  *See id.* at 3.  Surveillance photographs show that a suspect in the 7-11 robberies was wearing the black "True Religion" brand hooded sweatshirt with white piping similar to the one the government proffers was worn by defendant Bradley Lee during the Rite-Aid robbery.  *Id.*  On top of the hoodie, the suspect was wearing a parka-like jacket with a fur-trimmed hood that appears similar to a jacket worn by defendant's brother, Breyon Lee, in a photograph taken during a January 7, 2016 arrest.  *Id.*  A second suspect was wearing clothing associated with one of defendant's co-defendants, Anthony Burns, and the third was wearing clothing associated with defendant's brother, Breyon Lee.  *See* Gov't Ex. 1.  In carrying out the two 7-11 robberies on December 12, 2015, it appears from the surveillance video that the perpetrators followed a procedure similar to the one involved in the Rite-Aid robbery.

On June 7, 2016, the grand jury returned a superseding indictment, charging defendant Bradley Lee, his brother Breyon Lee, and Gregory Hull with the Rite-Aid robbery.  Indictment at 3.  Count Four charges that those defendants took merchandise belonging to a Rite Aid Pharmacy located at 4635 South Capitol Street, S.W., Washington, D.C., "from the custody and possession

of employees of that store, against their will by means of actual and threatened force, violence, and fear of injury, immediate and future, to their persons." *Id.*[2]

On June 17, 2016, defendant's brother, Breyon Lee, was arrested in the District of Columbia. Breyon Lee Arrest Warrant [Dkt. # 14]; Gov't Detention Mot. at 3.[3]  At the detention hearing, Special Agent Rooney testified that he was the FBI case agent assigned to investigate the string of armed robberies in the District and Maryland, and that he was surveilling Breyon and Bradley Lee as part of that investigation when he observed both defendants cross the street within a few feet of his unmarked vehicle and join a group of several individuals outside of an apartment complex. Special Agent Rooney testified that he called MPD officers to the scene to arrest both defendants, and that as the MPD officers approached the group of individuals, Bradley Lee turned and walked quickly away. Special Agent Rooney added that he observed Bradley Lee turn and look back over his shoulder before ducking into a nearby apartment building. Breyon Lee was arrested, but Bradley Lee was not apprehended on that date, despite efforts to locate him.

On July 27, 2016, more than five weeks after his brother was apprehended, Bradley Lee was arrested in Rochester, New York. Gov't Detention Mot. at 3. Special Agent Rooney testified that he was informed by the arresting agents that defendant fled from the officers during the arrest, but did not get very far before he was apprehended. Defendant's own witness, Ms. Hudson, confirmed this account, as she told the Court that when the agents in Rocheter appeared on the street and called the defendant's name, he ran. The government proffered that while defendant

---

2   Bradley Lee's co-defendants – Breyon Lee, Gregory Hull, and Anthony Burns – are all being held without bond. *See* Min. Entry (Feb. 18, 2016); Mem. Op. & Order (July 1, 2016).

3   The arrest warrant and the docket in this matter indicate that the arrest occurred on June 17, 2016, and the government's motion provides the same date. However, Special Agent Rooney testified during the detention hearing that Breyon Lee was arrested on June 16, 2016, and the FBI Form 302 completed by Special Agent Rooney with regard to that arrest also states that it took place on June 16, 2016. Because the date is not material to the Court's analysis, it will use the date provided in the arrest warrant that is part of the Court's docket.

was being held after his arrest, he told the agents that "he had run from 'MPD' in D.C.," that "he knew an arrest warrant had been issued for him because his friends who were incarcerated told him," and that "he was relieved he was apprehended so that he did not have to be on alert at all times." *Id.*  He also allegedly told the arresting agents "that his mother wanted him to turn himself [in]," but that "this was not something he wanted to do."  *Id.*  Defendant's own witness, Ms. Hudson, confirmed that defendant spoke to his mother and other family members regularly while he was staying with her in Rochester.

The government introduced an FBI Form 302 completed by the arresting agents which memorializes these statements, as well as a video of the comments made by the defendant while sitting in the custody of the FBI Agents in Rochester.  During the nearly two-hour video, defendant proudly volunteered that he had been well aware that he was under surveillance in the District and in Rochester, and that he had managed to elude police in the District.

## STANDARD OF REVIEW

The Bail Reform Act of 1984, 18 U.S.C. § 3142 *et seq.*, provides that if a judicial officer finds by clear and convincing evidence that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial."  18 U.S.C. §§ 3142(e)(1), (f)(2)(g).  Even if defendant does not pose a flight risk, danger to the community alone is a sufficient reason to order pretrial detention.  *United States v. Salerno*, 481 U.S. 739, 754–55 (1987); *United States v. Simpkins*, 826 F.2d 94, 98 (D.C. Cir. 1987).

Congress also specified in the Bail Reform Act that a judicial finding that there is probable cause to believe that the defendant committed certain offenses – including the offense of using or carrying a firearm during and in relation to a crime of violence, or possessing a firearm in furtherance of a crime of violence, 18 U.S.C. § 924(c)(1)(A) – gives rise to a rebuttable

6

presumption that a defendant is a danger, and that no pretrial condition or combination of conditions will be sufficient to protect the community. 18 U.S.C. § 3142(e)(3)(B).

Once a rebuttable presumption has been triggered, "the presumption operate[s] *at a minimum* to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption." *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985) (emphasis in original); s*ee also United States v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985) (the presumptions in § 3142(e) "are 'rebutted' when the defendant meets a burden of production by coming forward with some evidence that he will not flee or endanger the community if released"), quoting *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986); *United States v. Rodriguez*, 950 F.2d 85, 88 (2d Cir. 1991) ("[A] defendant must introduce some evidence contrary to the presumed fact in order to rebut the presumption."), citing *United States v. Matir*, 782 F.2d 1141, 1144 (2d Cir. 1986). While the burden of production may not be heavy, *see United States v. Stricklin*, 932 F.2d 1353, 1355 (10th Cir. 1991), the applicable cases all speak in terms of a defendant's obligation to introduce "evidence."

And, as the court explained in *United States v. Ali*, 793 F. Supp. 2d 386 (D.D.C. 2011), even if the defendant offers evidence to counter the presumption, the presumption does not disappear entirely:

> At oral argument, defendant's counsel posited that the rebuttable presumption functions as a "bursting bubble" that ceases to exist once a defendant produces any credible evidence. Although the D.C. Circuit has not expressly ruled on this issue, circuits that have considered the issue require using the presumption as a factor even after the defendant has produced credible evidence as do judges of this Court.

*Id.* at 388 n.2 (internal citations omitted), citing *United States v. Bess*, 678 F. Supp. 929, 934 (D.D.C. 1988) ("[The presumption] is incorporated into the § 3142(g) factors considered by the court when determining whether conditions of release can be fashioned or whether the defendant must be detained pretrial."); *see also United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010)

("Even when a defendant satisfies his burden of production, however, 'the presumption favoring detention does not disappear entirely but remains a factor to be considered among those weighed by the district court.'"), quoting *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001); *Portes*, 786 F.2d at 764 ("[U]se of [the word rebutted] in this context is somewhat misleading because the rebutted presumption is not erased.  Instead, it remains in the case as an evidentiary finding militating against release, to be weighted along with other evidence relevant to factors listed in § 3142(g)."), quoting *Dominguez*, 783 F.2d at 707.

As the U.S. Court of Appeals for the Sixth Circuit has explained:

> The presumption remains as a factor because it is not simply an evidentiary tool designed for the courts.  Instead, the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial.  To rebut the presumption, therefore, a defendant should "present all the special features of his case" that take it outside "the congressional paradigm."

*Stone*, 608 F.3d at 945–46 (internal citations omitted), quoting *United States v. Jessup*, 757 F.2d 378, 387 (1st Cir. 1985).

But in the end, while the presumption operates to shift the burden of production, it does not alter the government's statutory burden of persuasion, which is consistent with the presumption of innocence.  *Portes*, 786 F.2d at 764.  "Regardless of whether the presumption applies, the government's ultimate burden is to prove that no conditions of release can assure that the defendant will appear and to assure the safety of the community." *Stone*, 608 F.3d at 946.

To determine whether the government has carried its burden, the Court must consider: (1) "the nature and circumstances of the offense charged, including whether the offense is a crime of violence," (2) the weight of the evidence, (3) the history and characteristics of the defendant, and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."  18 U.S.C. § 3142(g).

Finally, although the D.C. Circuit has not yet addressed the issue, the many circuits that have agree that the district judge should review *de novo* a detention decision rendered by a Magistrate Judge. *See, e.g.*, *United States v. Koenig*, 912 F.2d 1190, 1191 (9th Cir. 1990) (collecting cases); *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001); *United States v. Gonzales*, 149 F.3d 1192 at *1 (10th Cir. 1998); *United States v. Hazime*, 762 F.2d 34, 36 (6th Cir. 1985); *Portes*, 786 F.2d at 761. The Court will follow that procedure in this case.

## ANALYSIS

The government maintains that defendant Bradley Lee is subject to pretrial detention pursuant to 18 U.S.C. §§ 3142(f)(1)(A) and (f)(2)(A) because the charged offense qualifies as a crime of violence and because there is a serious risk that the defendant will flee. Gov't Appeal Mot. at 3. There appears to be no dispute in this case that armed robbery in violation of 18 U.S.C. § 1951 qualifies as a "crime of violence" for purposes of section 3142(f)(1)(A).[4]

The government has taken the position that "[d]ue to the Defendant's indictment for the Rite-Aid Hobbs Act violation . . . the rebuttable presumption under 18 U.S.C. § 3142(e) appl[ies]." Gov't Detention Mot. at 3. The Court agrees that there is probable cause to believe that the defendant committed an offense that triggers the presumption, and it finds that defendant has failed to come forward with sufficient evidence to rebut the presumption if it applies. The Court also finds, after consideration of the four factors set forth in section 3142(g), that there is clear and convincing evidence that "no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1).

---

4       With respect to whether a Hobbs Act robbery constitutes a "crime of violence" as that term is defined in 18 U.S.C. § 924(c)(3), *see United States v. McCallister*, No. CR 15-0171 (ABJ), 2016 WL 3072237, at *7 (D.D.C. May 31, 2016) (collecting cases).

I.      **The defendant is presumed to be dangerous, and he has not rebutted the presumption in this case.**

The Bail Reform Act creates a rebuttable presumption "that no condition or combination of conditions will reasonably assure the . . . safety of the community if the judicial officer finds that there is probable cause to believe that the [defendant] committed . . . an offense under section 924(c) . . . of this title." 18 U.S.C. § 3142(e)(3)(B).  This defendant is not currently charged with a violation of section 924(c); at this time, he is only charged with the robbery in violation of the Hobbs Act.  Indictment at 3.   But as the court reasoned in *United States v. Bess*, 687 F. Supp. 929 (D.D.C. 1988):

> [T]he facts found by the judicial officer at the detention hearing determine whether the statutory presumption is implicated; . . . the complaint need not allege a violation of one of the particular predicate offenses for the presumption to come into play.  If the facts establish probable cause that the defendant has violated 18 U.S.C. § 924(c), the judicial officer should give proper weight to Congress's general factual view that the defendant poses an unreasonable risk of danger to the community when applying the § 3142(g) factors.

*Id.* at 934.

So the question is whether this Court can make a finding on this record that there is probable cause to believe that the defendant violated section 924(c) when:  (1) there is probable cause to believe, based upon the fingerprint evidence, that he was an active participant in a multi-defendant Hobbs Act robbery at a Rite-Aid on December 21, 2015; and (2) there is probable cause to believe, based on the eyewitness accounts and the surveillance video, that two of the participants either used or carried a firearm during the commission of that crime of violence, or possessed a firearm in furtherance of that crime, in violation of section 924(c); but (3) defendant Lee was not one of the gunmen.  In other words, can a defendant be liable as an aider and abettor or a co-conspirator for an alleged violation of section 924(c), which imposes enhanced penalties for "any person who, during and in relation to any crime of violence . . . uses or carries a firearm or who,

in furtherance of any such crime, possesses a firearm"?  18 U.S.C. 924(c)(1)(A).  And if so, would

the presumption of dangerousness attach?  The Court answered these questions in its Memorandum

Opinion and Order supporting the pretrial detention of Breyon Lee, *see* Mem. Op. & Order (July

1, 2016), and it will apply the same reasoning here.

The Supreme Court has held that the government can "make its case" of aiding and abetting

a section 924(c) violation "by proving that the defendant actively participated in the underlying

drug trafficking or violent crime with advance knowledge that a confederate would use or carry a

gun during the crime's commission."  *Rosemond v. United States*, 134 S. Ct. 1240, 1243 (2014).

And the D.C. Circuit has concluded that a defendant who did not actually or constructively possess

a firearm may be punished as a principal if the government can show that the defendant conspired

in, or aided and abetted, a section 924(c)(1) offense.  *United States v. Long*, 905 F.2d 1572, 1577

(D.C. Cir. 1990); *see also United States v. Washington*, 106 F.3d 983, 1011–12 (D.C. Cir. 1977).

Having viewed the videotape of this armed robbery in progress, the Court finds that there

is probable cause to conclude that Bradley Lee either aided and abetted, or conspired in, the use of

a firearm during and in relation to, or the possession of a firearm in furtherance of, a crime of

violence.  *See* 18 U.S.C. § 924(c).  The surveillance footage showed an efficient, well-orchestrated

robbery of the Rite-Aid pharmacy.  The four men who committed the offense entered the store

together, and one of them visibly drew his weapon just as he passed through the doors.  Nothing

shown on the tape or any of the evidence presented during any of the hearings in this matter gave

rise to the impression that the individual alleged to be Bradley Lee was surprised or concerned in

any way about the use of the firearms, and the perpetrators left the store together and fled in a

single car.  So there is probable cause to believe that this defendant aided and abetted, or conspired

in, the commission of the uncharged firearms offense.

The government has not pointed the Court to authority for the proposition that under the Bail Reform Act, it may rely upon a vicarious liability theory to establish the commission of an offense that gives rise to the rebuttable presumption under section 18 U.S.C. § 3142(e)(3). But in interpreting another section of the Bail Reform Act, the First Circuit stated that "a conspiracy to commit a crime of violence is itself a crime of violence" under the Act. *United States v. Mitchell*, 23 F.3d 1, 3 (1st Cir. 1994). In other words, the Bail Reform Act "does not require that the defendant himself commit acts of physical violence as a condition precedent to a detention order." *United States v. Ciccone*, 312 F.3d 535, 542 (2d Cir. 2002). Because the government has established probable cause to believe that that defendant violated section 924(c) by aiding and abetting or conspiring in the commission of that offense, the Court could find that the rebuttable presumption prescribed in § 3142(e)(3)(B) applies in this case.

If the presumption applies, the burden then shifts to the defendant to come forward with credible evidence that he does not pose a danger to the community. *Alatishe*, 768 F.2d at 371. Defendant has pointed the Court to his limited criminal history, and he insists that there is only circumstantial evidence of his involvement in the two 7-11 robberies, but he has offered no *evidence* to rebut the statutory presumption.

But even if the Court were to conclude that the defendant has come forward with something to counter the presumption and show that he does not pose a danger to the community, it would be bound to go on and consider the all of the factors set forth in section 3142(g). And with or without the presumption, the Court finds that consideration of those factors weighs in favor of detention.

## II. Considering only the factors set out in the Bail Reform Act, the Court finds that the defendant should be detained.

### A. The Nature and Circumstances of the Offense Charged

In determining whether there are conditions of release that will assure defendant's appearance and the safety of the community, the Court must first consider "the nature and

circumstances of the offense charged." 18 U.S.C. § 3142(g)(1). Section 3142(g)(1) specifically directs the Court to consider "whether the offense is a crime of violence . . . or involves a . . . firearm" in making that assessment. *Id.*

Here, both are true. Armed robbery in violation of 18 U.S.C. § 1951 qualifies as a crime of violence, *see United States v. McCallister*, No. CR 15-0171 (ABJ), 2016 WL 3072237, at *7 (D.D.C. May 31, 2016), and defendant does not contest that two handguns were involved in the Rite-Aid robbery. The surveillance camera captured a clear view of one of the robbers violently jerking the cashier back by his collar and pointing a gun directly at his head. The fact that the defendant did not personally brandish one of the two weapons used in the offense is of no moment. For those reasons, the Court finds that the nature and circumstances of the offense weigh heavily in favor of detention.

**B.      The Weight of the Evidence of Defendant's Dangerousness**

The Court must next consider the weight of the evidence against the defendant. 18 U.S.C. § 3142(g)(2). Courts in other circuits have cautioned that a district court assessing the weight of the evidence at this juncture must not consider the evidence of the defendant's guilt, but rather, they must consider only the weight of the evidence of the defendant's dangerousness. *Stone*, 608 F.3d at 948; *see also United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991) (holding that section 3142(g) "neither requires nor permits a pretrial determination of guilt").

Here, while the defendant does not have an extensive prior criminal history, the weight of the evidence of his dangerousness is strong. On the indicted offense itself, the evidence provided by the government indicates that defendant was a participant in a violent and dangerous armed robbery, which placed several innocent victims at risk and involved two weapons. When the Court also considers the evidence linking defendant to the two 7-11 robberies, which also involved handguns and the violent use of force against victims, the evidence of defendant's dangerousness

becomes even stronger.  And he has offered no evidence himself to controvert the government's proffer on this issue.  Accordingly, this factor also favors pretrial detention.

### C.    The History and Characteristics of the Defendant

The Court is also required to consider the history and characteristics of the defendant, including his character, family, employment, and criminal history, financial resources, community ties, and record concerning appearance at court proceedings, among other factors.  18 U.S.C. § 3142(g)(3)(A).   While defendant's criminal history is not significant, the Pretrial Services Agency report does reflect that he has a 2014 conviction for marijuana possession with intent to distribute, for which he completed a term of probation without incident, and that that he was again charged with a similar offense as recently as June 2016.  And the Court cannot help but observe that one cannot talk about the defendant's lack of criminal history without first putting aside the evidence of his alleged connection to three armed robberies.  Defendant's experience with violence may have been short-lived, but it was significant enough to make him dangerous.

Defendant insists that he has strong family ties to the area, and he has offered a proposal for his supervision – that he be permitted to reside with his mother in Maryland while on pretrial release.  But the Court has yet to hear from the mother in any fashion.  And defendant has failed to come forward with any evidence or testimony that would indicate how he would be supervised or occupied if released – he is unemployed, and his mother works full time outside the home.

As to defendant's other personal characteristics, he did not graduate from high school, but to his credit, he has completed his GED.  He insists that he is not a flight risk because he "is a lifelong resident of the D.C. metro area and has finished high school," and is currently in a relationship with Ms. Hudson, who is a full-time student at the George Washington University in the District.  Def.'s Suppl. at 1.  He "contests the Government's assertion . . . that [he] fled from officers when his brother was arrested on June 17, 2016."  *Id.*  He also insists that he did not flee

14

the District, but simply was visiting Ms. Hudson in Rochester, while she worked for the summer, and that he returned to the District after two trips before he was arrested in Rochester on July 27, 2016.  *Id.* at 1–2.  Defendant took the position in his opposition that while he "no doubt . . . knew of his brother's arrest and indictment," there was no indication that defendant "knew that he himself had been indicted and if he did know, when he knew he had been indicted."  *Id.* at 2.

The evidence shows that defendant made several trips to and from Rochester during June and July, and it is not particularly probative on the question of his knowledge of the indictment or his attempt to evade capture by leaving the jurisdiction.  Defendant took an American Airlines flight to New York on June 6, 2016, the day before the indictment was handed down, but despite having already purchased a return ticket home, he chose instead to take a bus back to the District on June 14, 2016.[5]  He returned to Rochester with Ms. Hudson on June 26, 2016, via automobile, and took a bus back to the District on July 1, 2016.  Finally, he traveled to Rochester by bus on July 25, 2016, and was arrested there two days later.

But the other evidence introduced at the hearing destroys any claim that defendant was unaware that he was wanted.  First, defendant has offered nothing to undermine Special Agent Rooney's testimony that he observed defendant fleeing from the scene of his brother's arrest by turning, quickly walking away from the approaching officers, and ducking into a nearby apartment building.  Furthermore, while he may have had a legitimate reason for traveling to Rochester in the first place – to visit his long-time girlfriend – the fact that he had a purpose for being there is not incompatible with the notion that he returned there to avoid capture.  Defendant also has not

---

5       The government posits that the defendant changed his method of transportation to reduce the chance that he would be tracked by authorities; defendant's girlfriend testified that defendant had been so frightened by the flight to New York – his first airplane trip – that he decided to take the bus back instead.  It is somewhat suspicious that a wanted individual with no means of support purchased a bus ticket without seeking a refund or credit for the unused portion of the airline ticket, but none of this evidence weighs heavily in the Court's decision.

controverted the testimony offered by Special Agent Rooney – and confirmed by Ms. Hudson, who was present at the scene of the arrest – that defendant attempted to flee from the arresting officers in Rochester as soon as they yelled his name and identified themselves as federal agents, and that he only stopped when he was caught by the agents.  Most important, the evidence includes a video tape of the defendant boasting to the Rochester FBI agents – not in response to any question – about how he knew the police were looking for him but, since he was "street smart," he successfully evaded them.  So this factor weighs in favor of detention.

**D.      The Nature and Seriousness of the Danger to Any Person or the Community That Would Be Posed by the Defendant's Release**

Finally, the Court considers "the nature and seriousness of the danger to any person or the community that would be posed" by defendant's release.   18 U.S.C. § 3142(g)(4).   And it concludes that this final factor also weighs in favor of detention.

With respect to the charged offense, as discussed above, the evidence shows that defendant was part of a group that allegedly planned and executed a violent armed robbery.  The robbery was both a serious and violent offense involving the use of two weapons against several victims, and it indicates that defendant would pose a threat to the community were he to be released.

Beyond the charged offense, there is other evidence of defendant's dangerousness.  While the D.C. Circuit does not appear to have addressed the issue, other courts have found that a court may consider a variety of sources of evidence of the defendant's danger to the community, separate and apart from evidence relating to the crime charged.  *See, e.g.*, *Stone*, 608 F.3d at 953; *United States v. Rodriguez*, 950 F.2d 85, 88 (2d Cir. 1991); *United States v. Quartermaine*, 913 F.2d 910, 917 (11th. Cir. 1990).  As one court in this district has observed, "[e]vidence of a defendant's dangerousness is in no way limited to evidence of the elements of the crime with which he is charged" – rather, "evidence of a defendant's dangerousness can be virtually unrelated to the

16

charged offense," especially "where the evidence of defendant's dangerousness relates to prior offenses." *Bess*, 678 F. Supp. at 933.

In this case, the Court has seen evidence – albeit circumstantial – that connects this defendant to a series of armed robberies and/or a conspiracy to commit a series of armed robberies, and which tends to show that he was a participant in two armed robberies in addition to the one charged in the indictment. In other words, the government has presented evidence to show, and the Court has significant reason to believe, that the charged offense was not an isolated event, but rather, part of a string of organized, planned armed robberies that involved one or more weapons and put innocent people in significant danger.

For all those reasons, the Court finds that the fourth statutory factor weighs heavily in favor of detention.

## CONCLUSION

Because defendant has failed to rebut the presumption of dangerousness, and because the factors set forth in the Bail Reform Act counsel in favor of detention in any event, the Court concluded that there is clear and convincing evidence that no condition or combination of conditions would reasonably assure the safety of the community or defendant's appearance as required at future proceedings in this matter. For that reason, it granted the government's motion for pretrial detention, and ordered defendant held without bond.

AMY BERMAN JACKSON
United States District Judge

DATE:  August 30, 2016